# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

DONALD LEJEUNE, an individual,     )
                                   )
                                   )
                    Plaintiff,     )
                                   )
v.                                 )   Case No.:  5:21-cv-01132-G
                                   )
STATE FARM FIRE AND CASUALTY       )
COMPANY,                           )
                                   )
                    Defendant.     )

---

## DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT

---

TIMILA S. ROTHER, OBA #14310
CROWE & DUNLEVY
A Professional Corporation
Braniff Building
324 North Robinson Avenue, Suite 100
Oklahoma City, Oklahoma 73102
(405) 235-7700
(405) 239-6651 (Facsimile)
timila.rother@crowedunlevy.com

**ATTORNEYS FOR DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY**

October 3, 2022

# **TABLE OF CONTENTS**

BACKGROUND/ CLAIM SUMMARY ........................................................................ 2

STATEMENT OF UNDISPUTED MATERIAL FACTS ("UMF")................................ 4

ARGUMENT AND AUTHORITIES .......................................................................... 9

I.    SUMMARY JUDGMENT STANDARD ................................................ 9

II.   PLAINTIFF'S  CLAIM FOR BREACH OF THE CONVENANT OF GOOD
      FAITH AND FAIR DEALING FAILS ON ALL THEORIES AS A MATTER OF
      LAW...................................................................................................... 10

      A.    There is a legitimate dispute as to whether there was covered damage to the
            shingles on Plaintiff's roof.............................................................. 12

      B.    State Farm conducted a reasonable inspection of the Property, based its
            coverage decision on that inspection, and acted fairly throughout ................ 14

III.  STATE FARM IS ENTITLED TO SUMMARY JUDGMENT AS TO
      PLAINTIFF'S PRAYER FOR PUNITIVE DAMAGES ......................................... 17

CONCLUSION ...................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..............................................................................9

*Badillo v. Mid Century Ins. Co.*,
   121 P.3d 1080 (Okla. 2005)..................................................................18

*Bailey v. Farmers Ins. Co.*,
   137 P.3d 1260 (Okla. Civ. App. 2006)..................................................11

*Bannister v. State Farm Mut. Auto. Ins. Co.*,
   692 F.3d 1117 (10th Cir. 2012)............................................................15

*Branch v. Farmers Ins. Co.*,
   311 F.3d 1241 (10th Cir. 2002)............................................................11

*Buzzard v. Farmers Ins. Co.*,
   824 P.2d 1105 (Okla. 1991)..................................................................15

*Christian v. Am. Home Assur. Co.*,
   577 P.2d 899 (Okla. 1977)....................................................................11

*Combs v. Shelter Mut. Ins. Co.*,
   551 F.3d 991 (10th Cir. 2008).........................................................17, 18

*Conti v. Republic Underwriters Ins. Co.*,
   782 P.2d 1357 (Okla. 1989)..................................................................11

*Estrada v. Port City Props., Inc.*,
   258 P.3d 495 (Okla. 2011)..............................................................17, 18

*Freeman v. State Farm Fire and Cas. Co.*,
   No. 5:21-CV-00807-J (W.D. Okla. Aug. 18, 2022).............................12

*Lopez v. Farmers Ins.Co.*,
   No. CIV-10-0584-HE, 2011 WL 1807158 (W.D. Okla. May 6, 2011).............15, 16

*Lunday v. State Farm Fire and Cas. Co.*,
   No. 5:20-CV-01238-G (W.D. Okla. July 12, 2022).............12, 14, 16

*Manis v. Hartford Fire Ins. Co.*,
    681 P.2d 760 (Okla. 1984)........................................................................... 11

*Moody v. Ford Motor Co.*,
    506 F. Supp. 2d 823 (N.D. Okla. 2007).................................................... 17

*Morrison v. Stonebridge Life Ins. Co.*,
    No. CIV-11-1204-D, 2015 WL 137261 (W.D. Okla. Jan. 9, 2015).......... 12, 13

*Newport v. USAA*,
    11 P.3d 190 (Okla. 2000)........................................................................... 18

*Roberts v. State Farm Mut. Auto. Ins. Co.*,
    61 F. App'x 587 (10th Cir. 2003) .............................................................. 16

*Semler v. GEICO Gen. Ins. Co.*,
    No. CIV-11-1354-D, 2013 WL 2179357 (W.D. Okla. May 17, 2013)......... 16, 17

*Shotts v. GEICO Gen. Ins. Co.*,
    943 F.3d 1304 (10th Cir. 2019) ........................................................ 12, 14, 16

*Sims v. Great Am. Life Ins. Co.*,
    469 F.3d 870 (10th Cir. 2006) ................................................................... 18

*Skinner v. John Deere Ins. Co.*,
    998 P.2d 1219 (Okla. 2000)....................................................................... 11

*U.S. Fid. & Guar. Co. v. Briscoe*,
    239 P.2d 754 (Okla. 1951)......................................................................... 13

**Statutes**

Okla. Stat. tit. 23, § 9.1............................................................................... 17

**Other Authorities**

Fed. R. Civ. P. 56 ........................................................................................ 1

Fed. R. Civ. P. 56(a).................................................................................... 9

This is a dispute about whether the roof shingles on the house of Plaintiff Donald LeJeune ("Plaintiff" or "Mr. LeJeune") suffered accidental direct physical loss from the hail event reported by Plaintiff, as required for coverage under the Policy. Defendant State Farm Fire and Casualty Company ("State Farm") promptly investigated the claim and found damage to an exhaust cap which was within the Policy deductible, but no damage to the shingles. State Farm also hired an engineer to inspect the roof and he found no hail damage to the shingles of Plaintiff's roof either. Plaintiff asserts there was hail damage from the reported date of loss and sues for breach of contract and bad faith and seeks punitive damages.

This is one of numerous similar cases filed by Plaintiff's counsel herein, in collaboration with Coppermark Public Adjusters ("Coppermark"), in which Coppermark demands a full roof replacement on behalf of the insured with an inflated replacement estimate after which State Farm (and other insurers) are sued for breach of contract and bad faith if the demand is not paid. Indeed, this case is analytically the same as *Lunday v. State Farm Fire and Casualty Company*, No. 5:20-CV-01238-G (W.D. Okla. July 12, 2022) in which the Court recently granted summary judgment on the plaintiff's bad faith and punitive damage claims.  State Farm submits that the same result is called for here.

Therefore, pursuant to Fed. R. Civ. P. 56, and abundant Oklahoma law, State Farm moves the Court for summary judgment  on 1) Plaintiff's claim for breach of the covenant of good faith and/or fair dealing and 2) on his claim for punitive damages.

## <u>BACKGROUND/CLAIM SUMMARY</u>

This is a lawsuit on a homeowners insurance policy relating to a claim of hail damage to Plaintiff's residence at 327 NW 12th Avenue, Norman, OK 73072 (the "Property"). Plaintiff sues for breach of contract and breach of the covenant of good faith and fair dealing and seeks actual and punitive damages.

On November 24, 2020, Plaintiff submitted a claim for hail damage because his neighbors had a contractor working on their roof, but he did not know the date of loss. State Farm inspected the Property on December 22, 2020,  found damage to one exhaust cap, but found no hail damage to the shingle. The exhaust cap estimate was $561.57, well within Plaintiff's $3,845.00 deductible. Thus, no payment was made.

Plaintiff sought a second inspection by submitting photos and an email analysis by a contractor. The contractor's analysis was as follows:

> "You have a great deal of granular loss on your roof. ***Extensive granular loss on roofs can make it much more difficult to determine if there is any impact damage on your roof*** …
>
> It was a challenge but as you can see in my photos, I saw what ***appears to be*** impact damage to your roof. . . ***I can't tell when these impacts occurred on your roof***... (emphasis added).

State Farm hired an engineer, who inspected the property on February 22, 2021 and found no hail damage to the shingles from the reported storm event either.

Plaintiff hired Coppermark on July 26, 2021. Coppermark months later made a demand for total roof replacement  in the amount of $68,604.34. Coppermark did not itself

inspect the property by relied on photos taken by a third-party contractor. After review, State Farm maintained its decision. .

It has been the law since the cause of action for breach of the covenant of good faith and fair dealing was first recognized, that an insurer is not and should not be in peril of liability for bad faith so long as it has made its claim decision reasonably and in good faith. A legitimate dispute as to the outcome of the claim is a defense to a bad faith claim. Here, State Farm promptly investigated Plaintiff's claim both via its adjustors and an engineer and considered all evidence, but found no storm damage to the shingles. It looked at the evidence again when it received the demand from Coppermark but found no evidence upon which to change its claim decision. At most therefore, there is a legitimate dispute as to whether the claim is owed.

As briefed more fully below, there is no dispute as to any material fact and State Farm respectfully requests that it be granted judgment as a matter of law on Plaintiff's claim for breach of the covenant of good faith and fair dealing.  Additionally, and in all events, Plaintiff has no facts to support a claim for punitive damages.

## STATEMENT OF UNDISPUTED MATERIAL FACTS ("UMF")

### Plaintiff's Property and Policy

1.      Mr. LeJeune purchased the Property in 2007 and he believes the house was built on or around 2006. (Donald LeJeune Dep. 10:15-25 (August 30, 2022) (Excerpt attached as Ex. 1) (hereafter "LeJeune Dep.")).

2.      The Property was insured under a policy of insurance with State Farm, Policy No. 36-EQ-6805-7 ("Policy"). (First Am. Pet., ¶ 4, Dkt 1-5; Certified Policy Record at

SFF&CC/LeJeune 000001, Ex. 2). The Policy was in effect on the alleged loss date of August 31, 2020. *Id*.

3.      As applicable here, the insuring provision covers "accidental direct physical loss to the property…unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED**" (Policy at SFF&CC/LeJeune 000026, Ex. 2.) Specifically excluded from coverage is "wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown;" (Policy at SFF&CC/LeJeune 000029, (1)(g), Ex. 2).

4.      The Policy covers "the cost to repair or replace with similar construction" and "until actual repair or replacement is completed, [State Farm] will pay only the ***actual cash value*** … up to the appliable limit of liability." (Policy at SFF&CC/LeJeune 000032, Ex. 2). The loss deductible is $3,845.00. (SFF&CC/LeJeune 000005, Ex. 2).

5.      The roof on the Property has not been replaced since it was built. LeJeune Dep. 10:15-25, Ex. 1. In or about 2019, Mr. LeJeune replaced some gutters and downspouts, roof and ridge vents, and new shingles surrounding the vents. (LeJeune Dep. 30:15-33:21; ProNet Engineer Report at 6, Ex. 3).

6.      Plaintiff did not contact State Farm to report a claim until he noticed a neighbor having his roof replaced and does not really know when the alleged loss to his roof occurred. (LeJeune Dep. 44:10-45:13, 46:18-47:8, 48:17, 150:17-151:5, Ex. 1).

<u>**Plaintiff's Claim for Insurance Benefits and Claim Investigation**</u>

7.      On November 24, 2020, Mr. LeJeune made a claim for storm damage, which was assigned claim number 36-13Z0-28D. (Claim File at SFF&CC/LeJeune 00085, Ex. 4). The date of loss was set at August 31, 2020. (Claim File at SFF&CC/LeJeune 00081, Ex.

4

4; LeJeune Dep. 150:17-151:5, Ex. 1).

8.     On December 22, 2020, external claims resource adjuster Patrick Fox ("Fox") inspected the exterior of the house, including the roof, and took numerous photos documenting its condition. (Claim File at SFF&CC/LeJeune 00080, Ex. 4). Present at the inspection were Mrs. LeJeune and Craig Cox of Elite Roofing Systems. *Id*. Fox found no hail damage to the shingles and found no hail damage to any slopes, ridges or valleys. *Id*. Fox determined there were areas of exposed matting with old "grayed out" damage as a result of deterioration or possibly a much older hail storm. *Id*. As to any recent date of loss, hail damage was found only on an exhaust cap. *Id*. Fox immediately reviewed his conclusions with Mr. LeJeune, created the estimate on site and summarized his findings in the file. (Claim File at SFF&CC/LeJeune 00080-81, Ex. 4).

9.     On January 15, 2021 Plaintiff submitted photos and an email analysis from contractor Jonathan Marks at Aegis Roofing and requested a second inspection. (1/12/2021 Email, SFF&CC/LeJeune 00383-397, Ex. 5.).

10.    The email analysis stated:

"You have a great deal of granular loss on your roof. ***Extensive granular loss on roofs can make it much more difficult to determine if there is any impact damage on your roof***. Granular loss is an expected roof condition that occurs over time due to the pounding of wind, hail, rain and sun. . . I inspected specifically to see if you had any hail impact marks (bruises) that could be pulled out of all the granular loss. . .. It was a challenge but as you can see in my photos, I saw what appears to be impact damage to your roof. . ***. I can't tell when these impacts occurred on your roof.*** I can only say I believe you do have impact damage. I might also mention that excessive shingle granular loss caused by any one storm event can reduce the life expectancy of your roof as well. ***I'm not saying that happened here and there is no way we can tell that at this point***, but it does occasionally occur. . .. ***In conclusion, your insurance company will still need to decide whether***

5

*they believe you have hail impact damage and when they believe it occurred to consider repair or replacement of your roof*." (*Id.*) (emphasis added).

11.     The claim was then assigned to Claims Specialist David Camp to review the Aegis submission. Camp, along with Team Manager Jack Buben, initially denied a second inspection. (1/15/2021 – 1/18/2021 Claim Notes, SFF&CC/LeJeune 00079, Ex. 4; 1/18/2021 Letter, SFF&CC/LeJeune 00204-205, Ex. 6).

12.     After a request from Mr. LeJeune, State Farm reconsidered the second inspection request and retained an engineer to inspect the property. (1/20/2021 and 2/1/2021 Claim Notes, SFF&CC/LeJeune 00078-79, Ex. 4).

13.      ProNet Group, Inc., via engineer Ryan Logan, inspected the Property on February 22, 2021. His report was provided to State Farm on March 16, 2021. Logan found no damage to the shingles from the reported storm event. (ProNet Engineering Report at 5, Ex. 3).

14.     Mr. Camp relayed the findings to Mr. LeJeune on the same date and sent the claim determination letter on March 22, 2021. (3/16/2021 and 3/22/2021 Claim Notes, SFF&CC/LeJeune 00077-78, Ex. 4; 3/22/2021 Letter SFF&CC/LeJeune 00194 – 195, Ex. 7).

## Post-Claim Decision Submissions and Investigation

15.     Three months later, State Farm received a letter of representation from Coppermark. (Authorization of Representation, SUB-Coppermark_000738, Ex. 8).

16.     Mr. LeJeune hired Coppermark based upon a referral by contractor Josh Gall. (LeJeune Dep. 115:5-116:16). Mr. Gall had repaired Mr. LeJeune's roof on June 29, 2021

as a result of reported leaks occurring on June 28, 2021 (long after the reported claim). *Id*. at 113: 24-6.  Those leaks did not exist when Mr. LeJeune made his claim to State Farm. *Id*. at 96:13-16, 153:24-154:2.  Mr. LeJeune did not report a new claim to State Farm as a result of alleged leaks, and interior leaks were not mentioned to State Farm or included in any estimates from Plaintiff or Plaintiff's public adjuster as part of his original claim. *Id*. (Stephanie Lee of Coppermark Deposition at 56:18-57:6, Ex. 9).

17.     State Farm received an email from Stephanie Lee at Coppermark on July 26, 2021 with an Authorization of Representation from Plaintiff requesting State Farm's engineer report and a copy of the Policy. (7/26/2021 Claim Note, SFF&CC/LeJeune 00077, Ex. 4; Authorization of Representation, Ex. 8). State Farm emailed the requested engineer report along with State Farm's claim determination letter to Coppermark on July 27, 2021. (7/27/2021 Claim Note, SFF&CC/LeJeune 00077, Ex. 4). A copy of the policy was mailed to Coppermark on August 7, 2021. (8/7/2021 Claim Note, SFF&CC/LeJeune  00077, Ex. 4; 8/7/2021 Letter, SFF&CC/LeJeune 00315, Ex. 10).

18.     Coppermark sent James Ford of Yates Roofing & Construction to photograph the Property. (Lee Dep. at 50:1-8, 57:10-16).[1] Mr. Ford is not mentioned in Coppermark's estimate, nor are his opinions memorialized anywhere in Coppermark's report. (Coppermark Proof of Loss, SFF&CC/LeJeune 00496-515, Ex. 11). Neither Stephanie Lee nor Lauren Rodriguez (the only involved Coppermark employees) inspected

---

[1] Stephanie Lee testified that Greg Cannon of Coppermark went to the property for quality control to review photographs of James Ford, but none of the photos in the estimate are from Greg Cannon and Greg Cannon did not assist with the report. (Lee Deposition at 57:10-19, Ex. 9).

the property in person. (Lee Dep. at 58:21-59:8). However, Coppermark submitted an estimate, photo report and a Proof of Loss signed by Plaintiff on September 15, 2021 seeking an entire roof replacement, and related items, at a cost of $68,604.34. (Proof of Loss, SFF&CC/LeJeune 00496 - 515, Ex. 11). This estimate is Plaintiff's damage claim in this case. (First Am. Pet., ¶ 7).

19.     Coppermark's Proof of Loss Statement does not state that Plaintiff's property suffered damage from hail but references only "storm damage". (Coppermark Proof of Loss, Ex. 11).

20.     On September 15, 2021, Claim Specialist Britt Billingslea reviewed the photos and estimate submitted by Coppermark, reviewed the file notes regarding State Farm's prior inspection and engineer report, and determined State Farm's prior decision was correct. (Claim File at SFF&CC/LeJeune 00076, Ex. 4). State Farm again sent the prior claim determination letter to Coppermark, explaining State Farm's position. (9/23/2021 Claim Note, SFF&CC/LeJeune 00075-76, Ex. 4).

21.     State Farm retained roofing expert Brett Hall to also inspect the roof as part of the litigation. Mr. Hall physically inspected the Property on May 10, 2022 and found that "the shingles do not have evidence of direct physical damage from wind or hail." (Hall Expert Rep. at 4, Ex. 12).

22.     The deadline for Plaintiff to file his final list of expert witnesses and serve expert reports was August 22, 2022. *See* Scheduling Order at ¶ 3, Dkt. No. 12. Plaintiff designated no expert.

23.     Plaintiff filed a pro se Petition on August 30, 2021, Dkt. No. 1-2,  and a First

Amended Petition on November 22, 2021, Dkt. No. 1-5, both asserting causes of action for breach of contract and bad faith; Plaintiff seeks contract damages of $68,604.34. First Amended Pet. ¶ 7. Plaintiff also seeks punitive damages.

## ARGUMENT AND AUTHORITIES

### I.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper where, as here, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where evidence is such that no reasonable jury could return a verdict for the non-moving party, the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The "mere existence of a scintilla of evidence," conclusory allegations, or unsubstantiated assertions cannot defeat summary judgment. *Id.* at 252. State Farm meets that standard here.

### II.    PLAINTIFF'S CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING FAILS ON ALL THEORIES AS A MATTER OF LAW

The overwhelming evidence establishes the correctness of State Farm's conclusion that there was no storm related damage to Plaintiff's shingles, and Plaintiff comes forward with little or no admissible evidence to the contrary.[2] Nonetheless, State Farm does not

---

[2] As noted above, Plaintiff has not presented any expert testimony to support a claim for breach of contract. UMF 22. State Farm's expert did not find any evidence of hail damage to the roof. UMF 21. Neither of Plaintiff's initial contractors, Aegis Roofing, nor Craig Cox of Elite Roofing, provided an estimate for damages to State Farm. Prior to the involvement of Coppermark, the only evidence of hail presented by Plaintiff comes from Jonathan Marks of Aegis stating "[i]t was a challenge but as you can see in my photos, I saw what appears to be impact damage." UMF 9-10. Coppermark did not inspect the property until over 11 months from the date of loss and three months after State Farm had

move for summary judgment on that claim given that witnesses *may* testify to storm damage at trial if their testimony is admitted. But, the claim for breach of the covenant of good faith and fair dealing tumbles with the very absence of compelling evidence from Plaintiff to contradict the reasonably investigated conclusions of State Farm.  Thus, even assuming the jury finds for Plaintiff on the contract claim, the actions and conclusions of State Farm were more than reasonable and establish, at a minimum, a legitimate dispute regarding the scope of any damage to the roof. Indeed Aegis Roofing, the contractor hired by Plaintiff, proves the point as outlined above and below.

Since the inception of Oklahoma's bad-faith tort theory, a legitimate dispute between the insurer and insured as to coverage, even in the face of a "wrong" decision by the insurer, has precluded a finding of unreasonable, bad faith conduct as a matter of law. *Christian v. Am. Home Assur. Co.*, 577 P.2d 899 (Okla. 1977). "[T]here can be disagreements between insurer and insured on a variety of matters such as insurable interest, extent of coverage, cause of loss, amount of loss, or breach of policy conditions." *Id.* at 905. Such disagreements do not create tort liability for bad faith. Rather, "tort liability may be imposed only where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured." *Id.*[3] Thus, Oklahoma courts

---

already provided an adjuster and engineer to review the property.  UMF 18. This inspection came after a new and separate leak to Plaintiff's roof, yet Coppermark claims all hail was from the August 31, 2020 storm. *Id.*

[3] *See also Skinner v. John Deere Ins. Co.*, 998 P.2d 1219, 1223 (Okla. 2000) ("Because disagreements can arise concerning the amount of coverage, cause of loss, and breach of policy conditions, the tort of bad faith does not prevent the insurer from resisting payment or resorting to a judicial forum to resolve a legitimate dispute."); *Bailey v. Farmers Ins. Co.*, 137 P.3d 1260, 1264 (Okla. Civ. App. 2006) ("Insurers are free to make legitimate

addressing actions for breach of the covenant of good faith and fair dealing, including

property insurance claims, consistently hold that a legitimate dispute requires judgment as

a matter of law in favor of the insurer.[4] Federal courts applying Oklahoma law, including

the Tenth Circuit, are in accord. *See Branch v. Farmers Ins. Co.*, 311 F.3d 1241, 1243 (10th

Cir. 2002) (affirming summary judgment for property insurer on ground of its "reasonable

position taken in litigation of a legitimate coverage dispute").

   The Tenth Circuit, and this Court, have stated that determining whether a plaintiff

has made a sufficient showing of bad faith is a two-step process. *Lunday v. State Farm Fire*

*and Cas. Co.*, No. 5:20-CV-01238-G, Dkt. 71, (W.D. Okla. July 12, 2022) (citing *Shotts v.*

*GEICO Gen. Ins. Co.*, 943 F.3d 1304, 1314-15 (10th Cir. 2019)).[5] First, "the court

considers whether there is a legitimate dispute between the insurer and the insured

regarding coverage or the value of the claim." *Id*. at 10. Second, "if there is a legitimate

dispute, the court 'considers whether the plaintiff offered specific additional evidence to

demonstrate bad faith.'" *Id.* Additional evidence demonstrating bad faith includes "1) 'the

---

business decisions (and mistakes) regarding payment, as long as they act reasonably and
deal fairly and in good faith with their insureds.").

[4] *See e.g., Manis v. Hartford Fire Ins. Co.*, 681 P.2d 760, 762 (Okla. 1984) (bad-faith claim
failed as a matter of law because insurer had legitimate dispute even though plaintiff
prevailed on issue of coverage on breach of contract claim); *Conti v. Republic*
*Underwriters Ins. Co.*, 782 P.2d 1357, 1360-61 (Okla. 1989) (bad-faith claim should not
have been submitted to jury because insurer acted reasonably as a matter of law in denying
claim for homeowner's insurance for property damage).

[5] The Court's decision in *Lunday* is in line with similar cases in this district alleging bad
faith in what are at most, disputes as to the extent of alleged storm damage. *See e.g.*
*Freeman v. State Farm Fire and Cas. Co*., No. 5:21-cv-00807-J (W.D. Okla. August 18,
2022) Dkt. No. 48 (Order granting summary judgment as to bad faith claims for storm
claim including Coppermark and State Farm).

insurer did not *actually* rely on th[e] legitimate [dispute] to deny coverage'; 2) the insurer 'denied the claim for an illegitimate reason'; 3) the insurer 'otherwise failed to treat the insured fairly'; and 4) 'the insured performed an inadequate investigation of the claim.'" *Shotts v. Geico Gen. Ins. Co.* 943 F.3d 1304, 1314-15 (emphasis and alterations in original).

### A. There is, at best, a legitimate dispute as to whether there was covered damage to the shingles on Plaintiff's roof

The record cited above demonstrates that at a minimum, there is a legitimate dispute as to whether there was accidental direct physical loss to the shingles of Plaintiff's roof from the reported storm. Claims adjuster Fox physically inspected Plaintiff's Property and determined that there was no hail damage to the shingles.[6] UMF 8.  Plaintiff's contractor, Jonathan Marks, admitted "[y]ou have a great deal of granular loss on your roof. ***Extensive granular loss on roofs can make it much more difficult to determine if there is any impact damage on your roof*** … "[i]t was a challenge but as you can see in my photos, I saw ***what appears to be*** impact damage to your roof." UMF 10.   Thus, Plaintiff's own contractor could not conclusively state there was hail damage to the roof - - giving Plaintiff the benefit of the doubt, and after much searching, he found only what "appears to be hail."

Despite the absence of any persuasive evidence of hail, State Farm hired an engineer to also inspect the property; the engineer also found no hail damage to Plaintiff's roof from the reported event. UMF 13.

---

[6] "The Oklahoma Supreme Court has held that an accident, within the meaning of an insurance policy that does not define the term, 'is a distinctive event that takes place by some unexpected happening, the date of which can be fixed with certainty.'*" Morrison v. Stonebridge Life Ins. Co*., No. CIV-11-1204-D, 2015 WL 137261, *5 (W.D. Okla. Jan. 9, 2015) (citing *U.S. Fid. & Guar. Co. v. Briscoe*, 239 P.2d 754, 757 (Okla. 1951)).

When Coppermark submitted a packet of photos with a new estimate, State Farm reviewed the photos and estimate submitted by Coppermark, reviewed the file notes regarding State Farm's prior inspection and engineer report, and confirmed State Farm's prior decision that no hail damage to shingles existed; thus, the original decision was maintained. UMF 20. As to the Coppermark "evidence," the Coppermark adjuster who prepared the estimate did not inspect the property, instead relying on pictures taken by a contractor, James Ford. UMF 18. Mr. Ford was not identified in any materials from Coppermark, nor did he make any findings as to hail, but only took pictures. *Id*. The only Coppermark employee who went to the property, Greg Cannon, did not report findings or prepare an estimate, and did not include any photographs. *Id*. Thus, 1) State Farm has had multiple inspectors, including an engineer look at the roof, all of whom found no hail damage to the roof from the reported event, 2) Plaintiff's original contractor found only what "appears to be hail" among severe degranulation and after extensive searching and 3) in contrast, Plaintiff presents a claim for total roof replacement by Coppermark adjusters who never inspected the property. These differing views are, at best, a legitimate dispute.

In this Court's recent decision, *Lunday*, this Court found that 1) State Farm was reasonable in inspecting the plaintiff's property for wind damage and relying upon plaintiff's date of loss, rather than hail damage as was suggested by Coppermark, when wind damage was the only damage reported in plaintiff's claim, and 2) that State Farm could reasonably maintain its initial determination after receipt of Coppermark's alleged photographs of hail, since the photographs alone were not determinative on whether hail was present. *Lunday v. State Farm Fire and Cas. Co.*, No. 5:20-CV-01238-G, Dkt. 71 at

13

pp.10-15.  Based on that evidence, the Court granted summary judgment to State Farm on the bad faith claim. This case is analytically indistinguishable from *Lunday*.

Thus, at a minimum, the existence of a legitimate dispute is established.

**B. State Farm conducted a reasonable inspection of the Property, based its coverage decision on that inspection, and acted fairly throughout**

The second prong of the analysis from *Shotts* is likewise met. Plaintiff cannot and has not offered other evidence of bad faith. Mr. LeJeune's allegations against State Farm for bad faith center on the 1) underpayment of the claim—which as discussed above is not bad faith because the coverage is legitimately disputed—and 2) general disparagement, if that, of the investigation conducted by State Farm. *See generally* (First Am. Pet., ¶ 10, Dkt. No. 1-5 ("[f]ail[ing] to conduct a full and proper investigation…[c]onduct[ing] an outcome-based investigation with a pre-determined goal to deny coverage…[f]ail[ing] to properly investigate Plaintiff's claim and to obtain additional information both in connection with the original refusal and following the receipt of additional information…[f]ail[ing] to properly evaluate any investigation that was performed"). Plaintiff has not come forward with any evidence to support these generic conclusions in his Petition.  He does not articulate what more State Farm could or should have done or how it was unfair. Where the insured alleges inadequate investigation, he must show that "a more thorough investigation would have produced relevant information that would have delegitimized the insurer's dispute of the claim." *Bannister v. State Farm Mut. Auto. Ins. Co.*, 692 F.3d 1117, 1128 (10th Cir. 2012) (internal quotes omitted) (applying Oklahoma law). An insurer's investigation of a claim need only be "reasonably appropriate under the

circumstances" of the particular claim. *Buzzard v. Farmers Ins. Co.*, 824 P.2d 1105, 1109 (Okla. 1991). Thus, bad faith does not exist if an insurer's investigation reasonably supports the insurer's decision, even if further investigation ***could have been*** conducted. *Id.*

In *Lopez v. Farmers Ins. Co.,* the district court found that simply disagreeing with an inspector's conclusions regarding the cause of damage to a roof does not mean an investigation was unreasonable. No. CIV-10-0584-HE, 2011 WL 1807158 (W.D. Okla. May 6, 2011). In that case, the plaintiff's bad faith claim was premised on the insurer's allegedly improper denial of the plaintiff's roofing claim. *Id.* at *1. During the adjuster's inspection, she concluded the damage was caused by wear and tear, which was not covered by the policy. *Id.* The court granted the insurer's motion for summary judgment on the plaintiff's bad faith claim because the "[t]he crux of plaintiff's argument [was] that defendants disagreed with his roofer and expert regarding the cause of the damage to his roof." *Id.* at *3. The *Lopez* analysis applies with equal force here.  Mr. LeJeune does not describe any facts that were overlooked by State Farm nor has he explained how additional investigation would resolve the legitimate dispute between the parties.

In *Lunday*, in determining whether the second prong of *Shotts* had been met, the Court looked at the plaintiff's assertions that State Farm had adopted policies to avoid its contractual obligations with insureds focusing on the fact that State Farm had not hired an engineer to inspect the property, and the Court found that the decision not to hire an engineer did not reflect that State Farm inadequately investigated the plaintiff's claim. *Lunday v. State Farm Fire and Cas. Co.*, No. 5:20-CV-01238-G, Dkt. 71 at pp 15-17, (*See*

*Roberts v. State Farm Mut. Auto. Ins. Co.*, 61 F. App'x 587, 592 (10th Cir. 2003) ("Under Oklahoma law . . . an insurer's investigation need only be reasonable, not perfect.")).  Not only did State Farm retain an engineer to inspect the roof on Mr. LeJeune's residence, State Farm's retained expert for this case, Brett Hall, inspected the Property and came to the same conclusion. UMF 13, 21.[7]  Plaintiff's complaint boils down to the simple fact that he disagrees with State Farm's conclusions. (LeJeune Dep. 156:13-17, Ex. 1). That is not does not establish bad faith.

### III.    STATE FARM IS ENTITLED TO SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES

Plaintiff seeks punitive damages ((First Am. Pet., ¶ 12, Dkt. No. 1-5),[8] but he is not, as a matter of law, entitled to any type of punitive damages, as he can make no competent showing that State Farm acted in bad faith, let alone with malice. Whether there is any competent evidence to submit the issue of punitive damages to the jury under Oklahoma's statutory punitive damages regime is a question of law for the Court in the first instance.

---

[7] Further, while Brett Hall was retained by State Farm to offer expert opinions to the existence of damage to Plaintiff's roof, the Court can consider his opinions in assessing Plaintiff's bad-faith claim and determining whether State Farm acted reasonably. *Semler v. GEICO Gen. Ins. Co.*, No. CIV-11-1354-D, 2013 WL 2179357, at *7 (W.D. Okla. May 17, 2013) (reasoning, in granting summary judgment on bad faith claim, that the opinions of defendants' experts engaged in the case provided ample support for defendant's position and demonstrated that a more thorough investigation by defendant would not have altered its coverage decision).

[8] Oklahoma's punitive damage statute, Okla. Stat. tit. 23, § 9.1, upon which Plaintiff bases his prayer for punitive damages is unconstitutional because it plainly contemplates, and includes no safeguards which would prevent, the consideration of harm to others in setting the amount of a punitive award.  *Moody v. Ford Motor Co.*, 506 F. Supp. 2d 823, 849 (N.D. Okla. 2007).

*Estrada v. Port City Props., Inc.*, 258 P.3d 495, 504 (Okla. 2011) ("Nothing in the current statutory framework changes the trial court's responsibility to determine whether any competent evidence exists which would warrant submission [of] the question of punitive damages to the jury."); *Combs v. Shelter Mut. Ins. Co.*, 551 F.3d 991, 1000 (10th Cir. 2008) (considering a claim for punitive damages under Oklahoma's punitive damages statute, the court found the "submission of the issue of punitive damages to a jury [would] be improper," as the plaintiff "failed to demonstrate the requisite evil intent or such aggravating circumstances as to be deemed equivalent to such intent for punitive damages" (internal quotation marks and citations omitted)).

Punitive damages of any kind are warranted under Oklahoma law only where there is a finding of bad faith *and* "at a minimum, there is competent evidence of a reckless disregard by the defendant of the plaintiff's rights from which malice and evil intent may be inferred...." *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1106 (Okla. 2005); *Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 894 (10th Cir. 2006). The Oklahoma Supreme Court has emphasized that "[p]unitive damages are awarded only in the most egregious circumstances and are aimed at punishing the offending party." *Estrada*, 258 P.3d at 502 n.21. Indeed, even where, unlike here, bad faith can be established, that does not entitle a plaintiff to punitive damages unless the evidence justifies a finding that the insurer acted with "oppression, malice, or wanton or reckless disregard of the [insureds'] rights." *Newport v. USAA*, 11 P.3d 190, 204 (Okla. 2000).

There is zero evidence of egregious circumstances here, no malice, and no oppression or wanton or reckless disregard for the insured's rights. The undisputed material

facts reveal that Mr. LeJeune disagrees with State Farm's conclusions, nothing more. Submission of the issue of punitive damages to the jury, therefore, "would be improper." *Combs*, 551 F.3d at 1000.

## CONCLUSION

For all of the foregoing reasons, State Farm requests that this Court enter summary judgment in its favor as to Mr. LeJeune's cause of action for breach of the covenant of good faith and fair dealing and on his request for punitive damages.

Respectfully submitted,

/s/ *Timila S. Rother*

Timila S. Rother, OBA # 14310
**CROWE & DUNLEVY, PC**
Braniff Building
324 N. Robinson Ave., Suite 100
Oklahoma City, Oklahoma 73102
Telephone:  (405) 235-7700
Facsimile:  (405) 239-6651
timila.rother@crowedunlevy.com

**ATTORNEYS FOR DEFENDANT
STATE FARM FIRE AND CASUALTY
COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of October, 2022, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing.  Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrant:

**Ben D. Baker**                    ben@reddirtlegal.com

/s/ *Timila S. Rother*

Timila S. Rother